IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF IOWA

CENTRAL DEVISION

| | |
|---|---|
| JESSICA EGINOIRE, and JUSTIN EGINOIRE, as parents and next friend of J.E.E. a Minor<br>    Plaintiffs,<br><br>v.<br><br>INDIANOLA COMMUNITY SCHOOL DISTRICT, CRAIG SEXTON, RON and LORENZ,<br><br>    Defendants. | Case No.<br><br><br>**DEFENDANTS' NOTICE OF REMOVAL** |

**TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA, CENTRAL DIVISION**

This Notice of Removal respectfully shows that:

1.     Indianola Community School District, Craig Sexton, and Ron Lorenz are named Defendants in a civil action commenced in the Iowa District Court for Warren County, entitled Jessica Eginoire and Justin Eginoire, as parents and next fried of J.E.E. a Minor, Hardin County Law No. LACV036217.  When originally filed, Jessica and Justin Eginoire both had individual claims, which have been dismissed.  Brenda Miller and Jesse Miller as parents and next friend of T.M., a minor, and T.M were also originally Defendants, and they too have been dismissed.

2.     The parties have exchanged written discovery and various depositions have been taken.

3.      On October 20, 2016 an amended petition was deemed filed per the Court's Order attached hereto as Exhibit A, with notice of this action received by the undersigned Defendants' attorney on that same day.   A true and accurate copy of the Amended Petition at Law is attached hereto as Exhibit B.   No further proceedings have been taken after the amended petition was filed.

4.      This Court has original jurisdiction under the federal question provisions of 28 United States Code Section 1331 in that Plaintiffs' claims allege a violation of federal law through claims for violation of Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. section 1681 *et seq.*, and its implementing regulations,   34 C.F.R. Part 106.

5.      Defendants are, therefore, entitled to remove this action pursuant to 28 United States Code Section 1441(a).

6.      No previous application for relief sought herein has been made to this or any other Court.

7.      The Notice is timely filed pursuant to 28 United States Code section 1446(b).

8.      As required by 28 United States Code 1446(d), Defendants have provided written notice of the filing of this Notice of Removal to Peter Berger, 7109 Hickman Road,    Urbandale,    IA       50322,    (515)288-8888,    (515)288-8182    (fax), pbergerlaw@meadiacombb.net, and have filed a copy of this Notice of Removal with the Clerk of the State Court.  A copy of such notice is attached hereto as Exhibit C.

**WHEREFORE,** Defendants Indianola Community School District, Craig Sexton, and Ron Lorenz give notice that the above-entitled action now pending in the Iowa District Court for Warren County is removed to this Court.

BRADSHAW, FOWLER, PROCTOR & FAIRGRAVE, P.C.

By: _____

Janice M. Thomas  AT0007822
Catherine M. Lucas AT0010893
801 Grand Avenue, Suite 3700
Des Moines, IA  50309-8004
Phone:  (515) 243-4191
Fax:  (515) 246-5808
E-Mail:  thomas.janice@bradshawlaw.com
E-Mail:  lucas.catherine@bradshawlaw.com

ATTORNEYS FOR DEFENDANTS
INDIANOLA COMMUNITY SCHOOL DISTRICT,
CRAIG SEXTON and RON LORENZ

Copy to:

Peter W. Berger
Berger Law Firm, P.C.
7109 Hickman Road
Urbandale, IA 50322
Phone: 515-288-8888
Fax: 515-288-8182
Email: pbergerlaw@mediacombb.net

ATTORNEY FOR PLAINTIFFS

Jessie and Brenda Miller
17039 140th Avenue
Indianola, IA 50125
Phone: (515) 306-0008

**DEFENDANTS**

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing instrument was served upon one of the attorneys of record for all parties to the above-entitled cause by serving the same on such attorney at his/her respective address/fax number as disclosed by the pleadings of record herein, on the 25th of _October_____, 2016 by:

☐ U.S. Mail                    ☐ FAX
☐ Hand Delivered          ☐ UPS
☐ Federal Express         ☒ Other_ e-file_

_____Brenda Seyler_____

E-FILED  2016 OCT 07 1:48 PM WARREN - CLERK OF DISTRICT COURT

## IOWA DISTRICT COURT IN AND FOR WARREN COUNTY

| | |
|---|---|
| JESSICA EGINOIRE<br>JUSTIN EGINOIRE<br><br>    Plaintiffs<br><br>vs.<br><br>RON LORENZ<br>INDIANOLA COMMUNITY SCHOOL DISTRICT<br>CRAIG SEXTON<br><br>    Defendants | 05911  LACV036217<br><br>ORDER |

Plaintiffs have filed a motion for leave to amend their Petition. A hearing thereon is set as noted below. I

If no resistance is filed by October 20, 2016, the motion will be granted with Amended Petition considered filed the day of the Application's filing, and the hearing cancelled.

Hearing is scheduled on 10/25/2016 at 1:30 PM at the Madison Co Courthouse, 112 N John Wayne Drive, Winterset, IA.

If you need assistance to participate in court due to a disability, call the disability coordinator at (515) 286-3394. Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). **Disability coordinators cannot provide legal advice.**

5RCV01

If you need assistance to participate in court due to a disability, call the disability coordinator at (515) 286-3394. Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). **Disability coordinators cannot provide legal advice.**



1 of 2

E-FILED  2016 OCT 07 1:48 PM WARREN - CLERK OF DISTRICT COURT



State of Iowa Courts

**Case Number**   **Case Title**
LACV036217        JESSICA EGINOIRE ET AL VS INDIANOLA SCHOOL
                  DISTRICT ET AL
**Type:**         OTHER ORDER

So Ordered

Gregory A. Hulse, District Judge,
Fifth Judicial District of Iowa

Electronically signed on 2016-10-07 13:47:58

E-FILED  2016 OCT 06 3:17 PM WARREN - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR WARREN COUNTY

| | | |
|---|---|---|
| JESSICA EGINOIRE, and JUSTIN EGINOIRE, as parents and next friend of J.E.E. a Minor, JESSICA EGINOIRE individually, JUSTIN EGINOIRE individually | : | |
| | : | |
| | : | LAW NO. LACV036217 |
| Plaintiffs, | : | |
| vs. | : | |
| INDIANOLA COMMUNITY SCHOOL DISTRICT, CRAIG SEXTON, RON LORENZ, BRENDA MILLER, and JESSE MILLER, as parents and next friend of T.M. a Minor, T.M. | : | AMENDED PETITION |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

COMES NOW, Plaintiffs, Jessica Eginoire, and Justin Eginoire as parents and next friend of J.E.E., Jessica Eginoire individually, and Justin Eginoire individually, by their attorney, Peter W. Berger, and for their Petition at Law states the following:

<u>JURISDICTION</u>

1. Jessica Eginoire ("Jessica") and Justin Eginoire ("Justin"), are husband and wife, and residents of Warren County, Iowa.

2. J.E.E. is the minor child of Jessica and Justin, and is a resident of Warren County, Iowa.


EXHIBIT
B

3. Brenda Miller ("Brenda") and Jesse Miller ("Jesse"), are husband and wife, and residents of Warren County, Iowa.

4. T.M. is the minor child of Brenda and Jesse, and is a resident of Warren County, Iowa.

5. Craig Sexton ("Sexton") at all material times hereto was the principal at Laura Ingalls Wilder Elementary School, ("Wilder") in Warren County, Iowa, an employee of Indianola School District, and a "practitioner" as defined in The Iowa Board of Educational Examiners, Code of Professional Conduct and Ethics, Chapter 25.3(6) Standard VI.

6. Ron Lorenz ("Lorenz") at all material times hereto was a district school liaison, acting in his capacity as an employee of the Indianola School District, and as a "practitioner" as defined in paragraph 5 herein.

7. Indianola Community School District ("School District") located in Warren County, Iowa; is the administrative unit which governs Wilder and its employees; and is responsible for the supervision and training of Sexton and Lorenz.

8. The causes of action arose in Warren County, Iowa.

9. The undersigned certifies that this action meets the applicable jurisdictional requirements.

FACTS

10. Sexton was the principal while J.E.E. was enrolled as a student at Wilder.

11. Sexton was the principal while T.M. was enrolled as a student at Wilder.

12.  In 2013, at different times, J.E.E. was sexually abused by T.M, while she was routinely riding the school bus.

13.  No employee or volunteer acting on behalf of the Wilder or the School District interceded for J.E.E. to protect her from being sexually abused.

14.  On October 15, 2013, J.E.E. confided in Jessica about what T.M. had done to her on the school bus.

15.  On October 16, 2013, Jessica met with Sexton at Wilder, and told him of the sexual abuse.

16.  At the aforementioned meeting, Sexton stated what happened was "unacceptable"; that he would review school bus videotapes; that he was a mandatory reporter; and that he wanted to meet with J.E.E.

17.  On October 16, 2013, at Sexton's request, Jessica, Sexton, and J.E.E. met at Wilder, and J.E.E. told him what happened to her on the school bus.

18.  At the aforementioned time, Sexton was told that T.M. had threatened J.E.E. that she would get in trouble if "she told" what he had done to her.

19.  At the aforementioned time and date, Sexton told J.E.E., "I believe you."

20.  Between October 16 and October 21, 2013, J.E.E. would not ride the school bus, out of fear of being abused again.

21.  Jessica and Justin transported J.E.E. themselves to and from Wilder between October 16, and October 21, 2013.

22.  On October 17, 2013, Sexton met with Jessica and Justin at Wilder, in his office, and suggested that because Jessica and Justin knew the other family, they should contact Brenda and Jesse privately.

23.  On October 17, 2013, Sexton told Jessica and Justin that he had "called DHS," (Department of Human Services), and "there was nothing they can do since this was not a caregiver child situation."

24.  On October 17, 2013, Sexton also told Jessica and Justin that he had spoken with the Chief of Police and "since this was a he said, she said incident, with no physical proof or accounts from older children sitting nearby on the bus, they wouldn't investigate this further due to the age of the two kids."

25.  On October 17, 2013, Jessica and Justin made a "bullying" complaint to Sexton about what happened to J.E.E.

26.  On October 17, 2013, Sexton stated that there were no policies regarding sexual abuse between students, however the threats made by T.M. (described in paragraph 18) would be considered bullying.

27.  On October 17, 2013, Sexton filled out the bullying complaint paperwork in Jessica and Justin's presence, and stated he would complete it after "all tapes had been reviewed."

28.  Sexton never followed up with Jessica or Justin regarding the bullying complaint they thought they had made.

29.  Indianola Community Schools, School Board Policies, Code No.104 and 104R.1; and the Indianola Community Schools, Elementary Handbook for Students and

Parents, 2015-2016, Pg. 14-16, provide clear and strict guidelines as to how bullying complaints should be handled.

30.  During the aforementioned time, Jessica tried unsuccessfully to obtain an alternate form of transportation to be provided by Sexton, in his capacity as Wilder principal, and employee of the School District.

31.  Sexton put in place a one week trial "safety plan," whereby T.M. and his brother would have a separate seating assignment, away from J.E.E. and her brother, J.P.E.

32.  With regard to the aforementioned trial "safety plan," it was further agreed that if J.E.E. was still upset, and/or if she was still unsafe, the plan would be reviewed.

33.  Sexton told T.M. and his brother not to speak with J.E.E.

34.  Despite implementation of the trial "safety plan," J.E.E. would not ride the school bus without her older brother present for protection.

35.  There were instances where Jessica and Justin had to make alternative transportation arrangements on their own, because Sexton would not arrange same, when J.E.E.'s brother was not able to ride the bus to protect, and insure J.E.E. that she was safe.

36.  Jessica and Justin felt uncomfortable about contacting the other family directly, despite Sexton urging them to do so "outside of school."

37.  J.E.E. became very afraid of encountering T.M. at Wilder.

38.  T.M.'s brother approached J.E.E. at Wilder several times and said he knew what T.M. had done to her, and that he would tell everyone unless she was his friend.

39.  The aforementioned brother had ridden on the school bus with T.M. at all times material hereto.

40.  J.E.E. began having nightmares and exhibiting other physical and emotional symptoms, including having panic attacks.

41. On January 27, 2014, T.M.'s mother, Brenda, Facebook messaged Jessica stating that Sexton told her that T.M. had touched a girl on the school bus.

42.  Contained in the aforementioned message, was the question from Brenda whether J.E.E. knew anything about what Sexton had told her about; why her children still had assigned seats on the school bus; and that the only person T.M. sat next to on the bus was J.E.E.

43.  Immediately after receiving the aforementioned message from Brenda, which included a proposal to abandon the "safety plan" with seat assignments, Jessica and Justin went to Wilder and met with Sexton on January 27, 2014.

44.  At the aforementioned meeting, Sexton agreed the "safety plan" should not be changed, and that J.E.E. should be able to ride the bus without her brother's protection.

45.  At the aforementioned meeting, Sexton again urged Jessica and Justin to meet with Brenda and Jesse to try to work things out themselves.

46.  After the aforementioned meeting with Sexton, following Sexton's directive, Jessica told Brenda the victim was J.E.E., and Brenda sent a message apologizing for what T.M. had done to J.E.E.

47.  During the first week in February, T.M. approached J.E.E. at recess and mentioned what had happened, and apologized, which upset J.E.E. further.

48. After the aforementioned incident, Jessica again contacted Sexton and told him what had occurred.

49.  As time went on, J.E.E. continued to develop and demonstrate increased physical and emotional symptoms.

50.  On February 20, 2014, at a parent teacher conference, J.E.E.'s teacher advised Jessica and Justin that J.E.E. had been in pain and had missed recess and PE almost every day for the past two weeks.

51. No one told Jessica about J.E.E. missing recess until Jessica was told two weeks later at the parent teacher conference.

52.  Over time, because of the February 20, 2014 notification about missing recess, Jessica brought J.E.E. to numerous doctors with varying specialties in order to diagnosis what was causing her physical and emotional symptoms.

53.  When school returned to session in March, 2014, J.E.E.'s symptoms worsened and she also developed new symptoms, including severe headaches, and regressing with behavior similar to a younger child.

54.  Because of the aforementioned symptoms, Jessica continued to seek medical treatment for J.E.E.

55.  In May, 2014, at another meeting, Sexton admitted he had only "played phone tag" with DHS, and had not spoken with anyone directly.

56.  When Jessica met with Sexton on May 12, 2014, she told him of the continuing physical and emotional problems J.E.E. was having.

57. At the aforementioned time, Sexton told Jessica that many times, children exhibit symptoms such as physical pain long after an assault.

58. At the aforementioned time, Sexton recommended that Jessica inform J.E.E.'s doctors of the assault.

59. As Sexton recommended at the May 12, 2014 meeting, on May 13, 2014, Jessica informed the medical staff at University of Iowa Hospitals and Clinics that J.E.E. had been sexually assaulted.

60. After a thorough examination, interviews of Jessica, Justin, and J.E.E., and record review, the doctor stated that she thought J.E.E. was suffering from an emotionally damaging situation because J.E.E. was sexually abused, and that she should contact Polk County Rape Crisis Center for counseling.

61. On May 13, 2014, Jessica learned from J.E.E. and her son, that T.M. and his brother no longer had seat assignments on the bus, as guaranteed by Sexton as part of the "safety plan."

62. At the aforementioned time, Jessica was also told by J.E.E. that T.M. was coming up to her at various places, and times, at Wilder, which made her feel "shaky" in her chest.

63. At the aforementioned time J.E.E. told Jessica that she was afraid to tell anyone at school T.M. was approaching her and talking to her, including asking her about her weekend.

64. As a result of the above (paragraphs 61 – 63), Jessica emailed Sexton to request before and after school child care for J.E.E. for the remainder of the school year,

because the "safety plan" had been abandoned by Sexton without their knowledge and consent.

65.  Sexton replied that school resources were not available for before and after school programs, and therefore denied Jessica's request for day care at Indianola Child Care before and after school, because it was Jessica and Justin's voluntary decision for J.E.E. to no longer ride the school bus.

66.  Because Sexton would not accommodate J.E.E.'s care as requested, Jessica had to change her schedule at her employment with difficulty.

67.  As recommended at University of Iowa Hospitals and Clinics, Jessica inquired about counseling for J.E.E., and learned that the Polk County Crisis and Advocacy Center needed the case number that was assigned to the criminal investigation of J.E.E.'s assaults, which would have been established at the time Sexton said he reported them to DHS, and/or to the police.

68.  Upon learning that she needed the criminal investigation case number, Jessica met with Sexton on May 14, 2014, to obtain it, and to revisit what he was going to do to ensure J.E.E.'s safety for the remainder of the school year.

69.  At the aforementioned time, Sexton told Jessica that T.M.'s family was unwilling to abide by the "safety plan," which required seat assignments on the bus, so he would not enforce it.

70.  At the aforementioned time, Jessica told Sexton "that was not an option," and that J.E.E. would not ride the bus without an enforced safety plan; and therefore she had to arrange other transportation for J.E.E.

71.  At the aforementioned time, when Jessica asked Sexton for the case number, he replied, "there is no case number."

72.  When Jessica asked again for the case number Sexton would have gotten when he said he called the police, he replied that he had a "hypothetical conversation with Chief Button," and that he was told this was a "he said, she said situation" and they wouldn't investigate.

73.  Chief Button does not recall such a call, and would never have given the aforementioned opinion, hypothetical or otherwise.

74.  When Jessica reminded Sexton he said he had the legal obligation to have acted as a mandatory reporter, Sexton disagreed, stating this was not a "care-giver situation," which was in direct contradiction to what he told Jessica and Justin months earlier.

75.  On May 19, 2014, J.E.E. came home very upset after being approached again by T.M.'s brother asking about why she wasn't on the bus, to which J.E.E. replied they had moved.

76.  At the aforementioned time, J.E.E. was told by T.M.'s brother he was "glad they moved," and that her mother (Jessica) was "feeding her a bunch of garbage," and "they all hated her."

77.  At the aforementioned time, not fully understanding what was said, J.E.E. was very upset.

78.  At the aforementioned time, Sexton told Jessica that he would speak with T.M. and his brother and make sure they no longer approached J.E.E.

10

79.  Jessica filed a police report on May 28, 2014, (waiting until the upcoming school break to try to avoid further intimidation of J.E.E.), and the criminal investigation, and assignment of a criminal number happened immediately, contrary to Sexton saying the police chief would not investigate a case like this.

80.  On May 28, 2014, T.M.'s father, Jesse, followed Jessica home, past his house, and sat in his car at the dead end road near where she lived.

81.  At the aforementioned time, Jesse had no reason to be parked where he was near her home, and Jessica found it to be an attempt to intimidate her, which was very upsetting.

82.  J.E.E. was forensically interviewed at Blank Children's Hospital on June 10, 2014.

83.  Art Therapy Counseling for J.E.E. started on June 17, 2014.

84.  Warren County Detective, Morrison, called Jessica at the beginning of July, to tell her that T.M. had admitted to sexually assaulting J.E.E.

85.  J.E.E. has been suffering from significant psychological and physical symptoms at different times and locations, with varying triggering events, and has been diagnosed with PTSD.

86.  Because T.M. had now "officially" confessed, Jessica called an attorney for the District to inquire what would be done now to ensure J.E.E.'s safety; what disciplinary actions would be taken; and whether T.M would be expelled as an open enrollment student.

87.  At the aforementioned time, Jessica was referred to the school liaison, Lorenz, who told her there would be no disciplinary action; no safety plan; and no revocation of T.M.'s open enrollment.

88.  Lorenz spoke with T.M.'s family who said they would not change schools, but agreed to try to limit contact by T.M., and his brother, with J.E.E.

89.  When Jessica inquired as to why the open enrollment would not be revoked under the known circumstances of admitted assault and continuing contacts, Lorenz stated that T.M's family said they would contact their attorney, and the school's attorney felt if they brought an affirmative action lawsuit, they would win.

90.  At the aforementioned time, Mr. Lorenz went on to tell Jessica that the school was not willing to risk that for J.E.E.'s mental stability.

91.  Lorenz suggested that Jessica and Justin move J.E.E. to a different school, but that her brother would have to stay at Wilder, "because he had not been assaulted."

92.  Lorenz also stated that J.E.E. leaving the school was "the best he could do" since Jessica and Justin were "unwilling to compromise."

93.  During August, 2014, Jessica and Justin moved, so J.E.E. would not have to be driven by T.M.'s house every day, which was very upsetting to her.

94.  After moving, Jessica and Justin enrolled J.E.E. and her brother in a different school.

95.  On or about September, 2014, in response to a separate, and totally independent parental claim of sexually related assaultive behavior on school grounds at recess, not involving T.M. or J.E.E., Sexton told that parent it's a "he said, she said"

12

situation and nothing could be done about it, which is essentially what Sexton told Jessica and Justin.

96.  Because of J.E.E.'s symptoms, some of which are manifested in public places, Jessica and Justin have had to make significant remedial measures (adjustments) in where and when the family can be present at certain locations.

97.  Jessica and Justin jointly attended most of J.E.E.'s numerous medical appointments.

98.  J.E.E. is receiving ongoing treatment and diagnosed with PTSD.

99.  Jessica is receiving ongoing treatment for depression and PTSD.

100.  The Iowa Board of Educational Examiners, Code of Professional Conduct and Ethics, Chapter 25.3(6) Standard VI, Sections b, c, and d, state the following:

> Unethical practice toward other members of the profession, parents, students, and the community.  Violations of this standard includes:
> b)  Deliberately suppressing or distorting subject matter for which the educator bears responsibility.
> c)  Failing to make reasonable effort to protect the health and safety of the student or creating conditions harmful to student learning.
> d)  Conducting professional business in such a way that the practitioner repeatedly exposes students or other practitioners to unnecessary embarrassment or disparagement.

## COUNT 1
## RESPONDEAT SUPERIOR
### Defendant School District
(Compensatory Damages)
All Plaintiffs

COME NOW, all Plaintiffs, and for their cause of action against Defendant, School District, state:

13

101.  Plaintiffs replead paragraphs 1 through 100 and incorporate same by reference.

102.  At all times material hereto, Sexton and Lorenz were employees of School District, and "practitioners" within the meaning of 282 – 25.2 (272), Code of Professional Conduct and Ethics, and acting within the scope of their employment as principal, and liaison, respectively at Wilder Elementary School.

103.  Sexton's negligent and intentional acts and inactions included, but were not limited to the following:

a)  Failure to protect J.E.E. from repeated sexual abuse on the school bus by an older boy, T.M.;

b)  Failure to protect J.E.E. by not expelling T.M. from Wilder;

c)  Failure to institute a safety plan that adequately protected J.E.E. from T.M.;

d)  Abandonment of the "safety plan" that was ineffective but in place;

e)  Failure to make a police report;

f)  Failure to tell Jessica and Justin that he knew children who are sexually abused often have physical and/or emotional symptoms;

g)  Failure to recommend external counseling for J.E.E.;

h)  Lying to Jessica that he had called the police, and that he was told nothing could be done;

i)  By failing to abide by the ethical requirements as a "practitioner" as set out in paragraph 102;

14

j)  Failure to follow and abide by established bullying reporting and remedial measures requirements.

k)  By reason of what is stated in paragraph 103 *a – I*, Sexton and Lorenz failed to satisfy the requirements of Title IX, as set forth in Count 10 and 11.

104.  Lorenz's negligent and intentional actions and inactions included, but were not limited to the following:

a)  Failure to abide by the ethical requirements required of a "practitioner" as set out in paragraph 102;

b)  Suggesting that J.E.E. withdraw from Wilder, rather than ensuring her safety;

c)  By accusing Jessica "of failing to compromise," when Jessica repeatedly attempted to have assurances from him in the protection of J.E.E.

d)  Failure to adequately protect J.E.E.

105.  As a proximate cause of the negligent and intentional acts by Sexton, and Lorenz, Plaintiffs have all sustained injuries and other damages, including, but not limited to, the following:

106.  Jessica and Justin as parents and next friend of J.E.E. a minor:

a)  Past and future medical bills for J.E.E.

107.  Jessica and Justin individually:

a)  Past and future loss of consortium with J.E.E.

108.  Jessica and Justin as parents and next friend of J.E.E.

a)  Past and future pain and suffering;

15

b)  Past and future loss of function.

WHEREFORE, Plaintiffs request judgment against School District, for compensatory damages in a fair and reasonable amount; for interest at the statutory rate; and for costs of the action.

## COUNT 2
## NEGLIGENT SUPERVISION AND TRAINING
### Defendant School District
(Compensatory Damages)
All Plaintiffs

COME NOW, all Plaintiffs, and for their cause of action against Defendant, School District, state:

109.  Plaintiffs replead paragraphs 1 through 108 and incorporate same by reference.

110.  At all material times hereto, the School District, by and through its agents and employees, knew or should have known of the harmful conduct of Sexton and Lorenz.

111.  The School District failed to properly exercise its duty of reasonable care regarding the training and supervision of Sexton, and Lorenz.

112.  The conduct of School District, as described in the preceding paragraphs, was a proximate cause of the injuries suffered by the Plaintiffs, as described in paragraphs 106 through 108 of the Petition herein.

WHEREFORE, Plaintiffs request judgment against School District, for actual and compensatory damages in a fair and reasonable amount; for interest at the statutory rate; and for costs of the action.

## COUNT 3
## <u>BREACH OF FIDUCIARY DUTY</u>
### Defendant Sexton
(Compensatory damages)
All plaintiffs

COME NOW, all Plaintiffs, and for their cause of action against Defendant, Sexton, state:

113.  Plaintiffs replead paragraphs 1 through 112 and incorporate same by reference.

114.  As principal of Wilder, and "practitioner," where J.E.E. was enrolled as a student, Sexton had a fiduciary relationship with J.E.E., Jessica, and Justin.

115.  As part of the aforementioned fiduciary duty, Sexton had a relationship of trust and confidence, and was under a duty to act for, and give advice to J.E.E., Jessica, and Justin, concerning all matters raised in Plaintiff's Petition.

116.  Because of Sexton's dominant role as principal, and his knowledge, experience, and expertise that one would expect Sexton to have, Jessica and Justin relied upon his statements and actions, and placed confidence in him, as described in Plaintiff's Petition.

117.  Sexton breached his fiduciary duty to Plaintiffs including but not limited to the following:

a)  Failure to protect J.E.E. from repeated sexual abuse on the school bus by an older boy, T.M.;

b)  Failure to protect J.E.E. by not expelling T.M. from Wilder;

c)  Failure to institute a safety plan that adequately protected J.E.E. from T.M.;

d)  Abandonment of the "safety plan" that was ineffective, but in place;

e)  Failure to make a police report;

f)  Failure to tell Jessica and Justin that he knew children who are sexually abused often have physical and/or emotional symptoms;

g)  Failure to recommend to Jessica and Justin that J.E.E. should have external counseling;

h)  Lying to Jessica and Justin that he had called the police, and that he was told nothing could be done;

i)  Failing to properly supervise Lorenz;

j)  Failing to follow and abide by established bullying reporting and remedial measures;

k)  Failure to abide by the ethical requirements required of a "practitioner" as set out in paragraph 102.

118.  As a proximate cause of Sexton's aforementioned actions, Plaintiffs have suffered, and will continue to suffer damages, as set out in paragraphs 106 through 108.

WHEREFORE, Plaintiffs request judgment against Sexton, for actual and compensatory damages in a fair and reasonable amount; for interest at the statutory rate; and for costs of the action.

## COUNT 4
## BREACH OF FIDUCIARY DUTY
### Defendant Lorenz
(Compensatory damages)
All Plaintiffs

COME NOW, all Plaintiffs, and for their cause of action against Defendant, Lorenz, state:

119.   Plaintiffs replead paragraphs 1 through 118 and incorporate same by reference.

120.   Lorenz at all times material hereto was a school liaison at Wilder, acting in his capacity as an employee, and "practitioner," for the School District.

121.   In the aforementioned capacity, Lorenz, had a fiduciary relationship with J.E.E., Jessica, and Justin.

122.   Because of Lorenz's role as school liaison, and his knowledge, experience, and expertise that one would expect him to have in that capacity, Jessica and Justin relied upon Lorenz' statements and actions, and placed confidence in him, as described in Plaintiff's Petition.

123.   Lorenz breached his fiduciary duty to Plaintiffs including but not limited to the following:

a)  Failure to protect J.E.E. from repeated sexual abuse on the school bus by an older boy, T.M.;

b)  Failure to protect J.E.E. by not expelling and/or recommending expulsion of T.M. from Wilder;

19

c) Failure to institute, or help institute, a safety plan that adequately protected J.E.E. from T.M.;

d) Failure to maintain the "safety plan" that was ineffective but in place;

e) Placing an undue burden on Plaintiffs to "compromise" with T.M., Brenda, and Jesse, while not looking out for the best interest of J.E.E.

124.  As a proximate cause of Lorenz's breach of fiduciary duty as set out in paragraph 123, Jessica has suffered damage including but not limited to the following:

a) Loss of consortium with J.E.E.;

125.  As a proximate cause of Lorenz's breach of fiduciary duty as set out in paragraph 123, Justin has been suffered the damage of loss of consortium with J.E.E.

126.  As a proximate cause of Lorenz's breach of fiduciary duty as set out in paragraph 123, Jessica and Justin have suffered damage including, but not limited, to the responsibility to pay past and future medical bills for J.E.E. treatment and care.

WHEREFORE, Plaintiffs request judgment against Lorenz, for actual and compensatory damages in a fair and reasonable amount; for interest at the statutory rate; and for costs of the action.

## COUNT 5
## FRAUDULENT MISREPRESENTATION
### Defendant Sexton
(Compensatory and punitive damages)
All Plaintiffs

COME NOW, all Plaintiffs, and for their cause of action against Defendant, Sexton, state:

127.  Plaintiffs replead paragraphs 1 through 126 and incorporate same by reference.

128.  Sexton knew the representation he made to Jessica and Justin that he had called the police was false.

129.  Sexton knew the representation he made to Jessica and Justin that the police chief said there was nothing he could do to investigate because of their age, there being no witness, and that it was a "he said, she said," was false.

130.  The representations contained in paragraph 129 were material, and intended to deceive Jessica and Justin.

131.  Jessica and Justin acted in reliance on the truth of the aforementioned representation, and were justified in doing so.

132.  Had a police report been made in a timely way, there would have been a forensic interview (as there was when Jessica filed the police report); J.E.E. would have been engaged in therapy immediately; and Jessica and Justin would not have sought medical treatment for J.E.E. not realizing her symptoms were from being sexually abused by T.M.

133.  The conduct of Sexton was so outrageous as to go beyond all possible bounds of decency and to be regarded as intolerable by society; were committed willfully and recklessly; and with an intentional disregard for the rights of Plaintiffs.

134.  As a proximate cause of Sexton's actions, Plaintiffs are entitled to compensatory damages as described in this Petition, as well as punitive damages.

WHEREFORE, Plaintiffs request judgment against Sexton, for actual and compensatory damages in a fair and reasonable amount; for interest at the statutory rate; and for costs of the action.

## COUNT 6
### LOSS OF CONSORTIUM
**All Defendants**
(Compensatory damages)
(Jessica and Justin Eginoire only)

COME NOW, Jessica and Justin Eginoire, and for their cause of action against all Defendants state:

135.  Jessica and Justin replead paragraphs 1 through 134 and incorporate same by reference.

136.  Due to the aforementioned actions of all Defendants as described in Plaintiff's Petition, Jessica and Justin have been denied the full benefit of the relationship between themselves as parents, and their daughter J.E.E.

WHEREFORE, Jessica and Justin request judgment against all Defendants herein for actual and compensatory damages in a fair and reasonable amount; for interest at the statutory rate; and for costs of the action.

## COUNT 7
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**Defendants Sexton, Lorenz, and School District**
(Compensatory and punitive damages)
All Plaintiffs

COME NOW, all Plaintiffs, and for their cause of action against Defendants, Sexton, Lorenz, and School District, state:

137.  Paragraphs 1 through 136 are incorporated herein by reference.

138.   Sexton and Lorenz willfully and intentionally engaged in a breach of their fiduciary duty to Plaintiffs.

139.   The School District either knew or should have known of the conduct of Sexton and Lorenz as described in this Petition.

140.   The conduct of Sexton and Lorenz was so outrageous as to go beyond all possible bounds of decency and to be regarded as intolerable by society; were committed willfully and recklessly; and with an intentional disregard for the rights of Plaintiffs

141.   As a proximate cause of Sexton and Lorenz's actions, Jessica's damages include:

       a)  Loss of consortium with J.E.E.;

142.   As a proximate cause of Sexton and Lorenz's actions, Justin's damages include:

       a)  Loss of consortium with J.E.E.

143.   As a proximate cause of Sexton and Lorenz's actions, J.E.E.'s damages include:

       a)  Past and future pain and suffering; and
       b)  Past and future loss of function.

WHEREFORE, Plaintiffs request judgment against all Defendants herein for actual, compensatory, and punitive damages in a fair and reasonable amount; for interest at the statutory rate; and for costs of the action.

## COUNT 8
## PARENTAL RESPONSIBILTY
**Defendants Brenda and Jesse Miller as parents and next friend of T.M.**
(Compensatory damages)
All Plaintiffs

COME NOW, all Plaintiffs, and for their cause of action against Defendants,

Brenda and Jesse as parents and next friend of T.M., state:

144.  Plaintiffs replead paragraphs 1 through 143 and incorporate same by

reference.

145.  Pursuant to Iowa Code Section 613.16, Brenda and Jesse are liable for their

child, T.M., who at all material times herein was under the age of eighteen years, for

actual damages to person or property caused by his unlawful acts, up to the amount of

five thousand dollars.

WHEREFORE, Plaintiffs request judgment against Brenda and Jesse as parents

and next friend of T.M., for actual and compensatory damages in a fair and reasonable

amount; for interest at the statutory rate; and for costs of the action.

## COUNT 9
## SEXUAL ABUSE
**Defendant T.M.**
(Compensatory damages)
All Plaintiffs

COME NOW, all Plaintiffs, and for their cause of action against Defendant, T.M.,

state:

146.  Plaintiffs replead paragraphs 1 through 145 and incorporate same by

reference.

147.  T.M. sexually abused and threatened J.E.E. as described in this Petition.

148.  As a proximate cause of T.M.'s aforementioned actions, J.E.E.'s damages include:

    a)  Past and future pain and suffering; and
    b)  Past and future loss of function

WHEREFORE, Plaintiffs request judgment against Defendant, T.M., for compensatory damages in a fair and reasonable amount; for interest at the statutory rate; and for costs of the action.

**COUNT 10**
**TITLE IX**
**Defendant Sexton**
(Compensatory damages)
All Plaintiffs

149.  Plaintiffs replead paragraphs 1 through 148 and incorporate same by reference.

150.  Sexton did not comply with the requirements of Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. section 1681 *et seq*., and its implementing regulations, 34 C.F.R. Part 106; and with the requirements and guidance provided in the "Dear Colleague Letter" dated April 4, 2011, published by the U.S. Department of Education.

151.  Sexton's aforementioned lack of compliance is set out in the above incorporated paragraphs of the Petition herein, and includes, but is not limited to:

    a)  Failure to protect J.E.E. form further harassment and bullying by T.M. and his brother;

b) Failure to accommodate J.E.E. needs as the victim of repeated sexual abuse on the Wilder Elementary school bus including but not limited to:

1) Failure to remove T.M. and his brother from the bus and/or providing alternate transportation to and from school for J.E.E.

2) Failure to provide after-school care and/or supervision until J.E.E. could be picked up after school, as a potential alternative to not riding the school bus, after Sexton did not remove T.M. and his brother from same.

3) Failure to remove T.M. from Wilder as an open enrollment student, which ultimately gave rise to J.E.E. having to change schools which is in violation of the spirit and law regarding Title IX, its amendments, Dear Colleague Letter of April 4, 2011, and Title 34 Education regulations.

4) Failure to fully and properly investigate, and provide appropriate remedial measures to ensure the safety and protection of J.E.E. from further exposure to and harassment by T.M. and his brother.

152.  Plaintiffs should be awarded reasonable attorney fees for recovery under this Count.

WHEREFORE, Plaintiffs request judgment against Defendant, Sexton, for compensatory damages in a fair and reasonable amount; for interest at the statutory rate; for costs of the action; and awarded reasonable attorney fees for recovery under this Count.

E-FILED  2016 OCT 06 3:17 PM WARREN - CLERK OF DISTRICT COURT

**COUNT 11**
**TITLE IX**
**Defendant Lorenz**
(Compensatory damages)
All Plaintiffs

153.  Plaintiffs replead paragraphs 1 through 152 and incorporate same by reference.

154.  Lorenz did not comply with the requirements of Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. section 1681 *et seq.*, and its implementing regulations, 34 C.F.R. Part 106; and with the requirements and guidance provided in the "Dear Colleague Letter" dated April 4, 2011, published by the U.S. Department of Education.

155.  Lorenz's aforementioned lack of compliance is set out in the above incorporated paragraphs of the Petition herein, and includes, but is not limited to:

a)  Failure to protect J.E.E. form further harassment and bullying by T.M. and his brother;

b)  Failure to accommodate J.E.E. needs as the victim of repeated sexual abuse on the Wilder Elementary school bus including but not limited to:

1)  Failure to remove T.M. and his brother from the bus and/or providing alternate transportation to and from school for J.E.E.

2)  Failure to provide after-school care and/or supervision until J.E.E. could be picked up after school, as a potential alternative to not riding the school bus, after Sexton did not remove T.M. and his brother from same.

3)  Failure to remove T.M. from Wilder as an open enrollment student, which ultimately gave rise to J.E.E. having to change schools which is in violation of the spirit and law regarding Title IX, its amendments, Dear Colleague Letter of April 4, 2011, and Title 34 Education regulations.

4)  Failure to fully and properly investigate, and provide appropriate remedial measures to ensure the safety and protection of J.E.E. from further exposure to and harassment by T.M. and his brother.

5)  By telling Jessica that she should withdraw J.E.E. from Wilder which is a blatant disregard and lack of compliance with Title IX that is promulgated to ensure the protection and safety of victims such as J.E.E.

156.  Plaintiffs should be awarded reasonable attorney fees for recovery under this Count.

WHEREFORE, Plaintiffs request judgment against Defendant, Lorenz, for compensatory damages in a fair and reasonable amount; for interest at the statutory rate; for costs of the action; and awarded reasonable attorney fees for recovery under this Count.

## COUNT 12
### TITLE IX
**Defendant School District**
(Compensatory damages)
All Plaintiffs

157.  Plaintiffs replead paragraphs 1 through 156 and incorporate same by reference.

158.  School District failed to comply with the requirements of Title IX, by reason of failing to investigate, accommodate, and protect J.E.E. when Sexton and Lorenz became aware that J.E.E. had been sexually abused on the Wilder school bus.

159.  Plaintiffs should be awarded reasonable attorney fees for recovery under this Count.

WHEREFORE, Plaintiffs request judgment against Defendant, School District, for compensatory damages in a fair and reasonable amount; for interest at the statutory rate; for costs of the action; and awarded reasonable attorney fees for recovery under this Count.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues triable to a jury.

Berger Law Firm, P.C.

/s/ Peter W. Berger

By: Peter W. Berger, AT0000826
7109 Hickman Rd.
Urbandale, IA 50322
Email:  pbergerlaw@mediacombb.net
Phone:  (515) 288-8888
Facsimile:  (515) 288-8182

CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2016, I electronically filed this document with the Clerk of Court using the Electronic Filing system which will serve it on the appropriate parties.

/s/ Peter W. Berger
Signature: _____

IN THE IOWA DISTRICT COURT FOR WARREN COUNTY

| | |
|---|---|
| JESSICA EGINOIRE, and JUSTIN EGINOIRE, as parents and next friend of J.E.E. a Minor, JESSICA EGINOIRE individually, JUSTIN EGINOIRE individually, | LAW NO.  LACV036217 |
| Plaintiffs, | **NOTICE OF FILING NOTICE OF REMOVAL IN FEDERAL COURT** |
| v. | |
| INDIANOLA COMMUNITY SCHOOL DISTRICT, CRAIG SEXTON, RON LORENZ, BRENDA MILLER, and JESSE MILLER, as parents and next friend of T.M. a Minor, T.M., | |
| Defendants. | |

**COME NOW**, Defendants Indianola Community School District, Craig Sexton, and Ron Lorenz, by and through the undersigned counsel, and give notice of Plaintiffs in the above-captioned action that these Defendants have filed a Notice of Removal in the United States District Court for the Southern District of Iowa, Central Division.  A copy of the Notice of Removal and all Exhibits thereto are attached to this Notice.


BRADSHAW, FOWLER, PROCTOR & FAIRGRAVE, P.C.

By: _____
          Janice M. Thomas  AT0007822
          Catherine M. Lucas AT0010893
          801 Grand Avenue, Suite 3700
          Des Moines, IA  50309-8004

EXHIBIT
C

Phone:  (515) 243-4191
Fax:  (515) 246-5808
E-Mail:  thomas.janice@bradshawlaw.com
E-Mail:  lucas.catherine@bradshawlaw.com

ATTORNEYS FOR DEFENDANTS
INDIANOLA COMMUNITY SCHOOL DISTRICT,
CRAIG SEXTON and RON LORENZ

Copy to:

Peter W. Berger
Berger Law Firm, P.C.
7109 Hickman Road
Urbandale, IA 50322
Phone: 515-288-8888
Fax: 515-288-8182
Email: pbergerlaw@mediacombb.net

ATTORNEY FOR PLAINTIFFS

Jessie and Brenda Miller
17039 140th Avenue
Indianola, IA 50125
Phone: (515) 306-0008

DEFENDANTS

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing instrument was served upon
one of the attorneys of record for all parties to the above-entitled cause by serving the same on
such attorney at his/her respective address/fax number as disclosed by the pleadings of record
herein, on the 25 of October                     , 2016 by:

☐ U.S. Mail            ☐ FAX
☐ Hand Delivered       ☐ UPS
☐ Federal Express      ☑ Other e-file

_Brenda Seyfer_